IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Criminal Action No. 13- 113-UNA |
| ) | |
| JAMES A. LADIO, ) | |
| ) | |
| Defendant. ) | |

**INFORMATION**

The United States Attorney for the District of Delaware charges that:

INTRODUCTION

*Information Relevant to All Counts*

At all times material to this Information:

1. MidCoast Community Bank, Inc. ("MidCoast" or the "Bank"), was a financial institution, as defined by Title 18, United States Code, Section 20, with deposits insured by the Federal Deposit Insurance Corporation. MidCoast was headquartered in Wilmington, Delaware, with four branch locations in Northern and Central Delaware. The Bank incorporated with the State of Delaware on or about January 10, 2007, and it began operations on or about March 15, 2007.

2. James A. Ladio ("Ladio" or "defendant") was one of the founders of MidCoast and served as the Bank's President and Chief Executive Officer until his termination from the Bank on or about August 24, 2013.

3. Bank Customer A, a MidCoast customer, was a real estate developer who owned multiple mobile home developments in the States of Delaware, Maryland, and Pennsylvania.

4.  Bank Customer B was a MidCoast customer who owned multiple businesses in the States of Delaware and New Jersey.

5.  Bank Employee A was the Senior Vice President and Chief Lending Officer at MidCoast, until his separation from the Bank in November 2012.

6.  Bank B, a TARP-recipient bank headquartered in Wilmington, Delaware, was a financial institution, as defined by Title 18, United States Code, Section 20, with deposits insured by the Federal Deposit Insurance Corporation.

7.  From 2004 through 2008, Bank B provided Ladio with at least four commercial lending facilities, all of which were structured on a demand basis

   A.  In September 2004, Bank B provided Ladio with a $20,000.00 interest-only, unsecured working capital line of credit.

   B.  In April 2005, Bank B provided Ladio with a $150,000.00 interest-only, unsecured revolving line of credit.

   C.  In May 2006, Bank B provided Ladio with a $165,000.00 interest-only, line of credit secured by a junior lien on Ladio's primary residence.

   D.  In March 2007, Bank B provided Ladio with a $225,000.00 unsecured, interest-only, working capital line of credit. In 2008, Bank B approved a $60,000.00 increase in the line of credit and modified the line of credit from a term facility to a demand facility.

8.  In or around December 1998, Bank B provided Ladio with a mortgage loan for an investment property in Wilmington (the "investment property"). Bank B, however, failed to record the mortgage securing the investment property. On or about September 30, 2003, Bank B provided Ladio with an additional mortgage loan in the amount of $69,138.46, which was secured by the same investment property. On or about March 20, 2009, Ladio sold the

investment property without notifying Bank B of the sale or using any of the proceeds toward repayment of the loan.

9. In or around April 2010, an employee of Bank B – while in the process of reviewing the commercial loans set forth in paragraph 7 for possible restructuring – discovered that Ladio had sold the investment property. At that time, the mortgage loan on the investment property remained open with a balance of approximately $44,000.00. On or about June 17, 2010, Ladio paid off the existing balance on the loan.

10. As a result of Ladio's failure to notify Bank B of the sale of the investment property, Bank B decided to downgrade the entire lending relationship and to call the commercial loans that were on demand. Bank B also transferred Ladio's loan portfolio from Commercial Lending to Loan Recovery.

11. On or about July 12, 2010, Ladio entered into a forbearance agreement with Bank B, whereby the parties agreed to convert Ladio's four commercial loan facilities from demand facilities into one-year interest only loans with full principal repayment due on or before July 1, 2011. The total amount of principal outstanding on the four loans was approximately $615,162.13. Ladio further agreed to make total monthly payments of approximately $7,072.38 to Bank B, which included a monthly principal payment of $5,000.00 and a monthly interest payment of $2,072.38.

## COUNT 1

(Bank Fraud)

12. The allegations set forth in paragraphs 1-11 of this Information are realleged and incorporated by reference as if fully set forth herein

13. From in or around August 2010, and ending on or about October 29, 2010, defendant James A. Ladio devised a scheme and artifice to obtain moneys, funds, credits, assets,

securities, or other property owned by MidCoast, by means of materially false or fraudulent pretenses, representations, or promises.

14. It was part of the scheme and artifice that the defendant caused a MidCoast customer, Bank Customer A, to misrepresent that the purpose of a commercial line of credit was to fund certain capital improvements for a construction project for Bank Customer A, when in truth and in fact, as defendant and Bank Customer A well knew, the funds would be used for Bank Customer A to provide a loan to defendant. Defendant and other individuals known to the United States Attorney committed the following acts in connection with the scheme and artifice:

A. On or about May 25, 2010, MidCoast approved a $700,000.00 commercial mortgage loan for Bank Customer A. The loan was funded as a ten-year amortizing term loan, with principal and interest payments due on a monthly basis.

B. A MidCoast Commercial Loan Approval Form indicated that the purpose of the loan was "to provide funding for capital improvements to be completed on three mobile home parks located in Dover, DE as well as fund the impact fees and [sewer] connection fees for each of the parks to the City of Dover."

C. Although the Bank approved the loan request, Bank Customer A did not finalize the loan agreement or draw upon any of the funds because the City of Dover had agreed to assume responsibility to fund the sewer projects at the mobile home parks.

D. In or around August 2010, Ladio informed Bank Employee A that Bank B had called approximately $650,000.00 of his personal loans, and that it was necessary for him to seek short-term financing. Ladio asked Bank Employee A to provide him with potential options for short-term funding. Bank Employee A searched the MidCoast lending system to determine which MidCoast customers had received approval for lending facilities that had not been fully drawn and provided Ladio with three potential customers – including Bank Customer A.

E. Bank Employee A subsequently contacted Bank Customer A and informed him that he would be receiving a phone call directly from Ladio. Shortly thereafter, Ladio called Bank Customer A and arranged a meeting. During the meeting, Ladio explained that Bank B was calling his loans, which were collateralized by his MidCoast stock. Ladio requested Bank Customer A to provide him with a short-term loan in the amount of $650,000.00, which would have an interest rate 2% higher than Bank Customer A's commercial mortgage loan with MidCoast.

F. On or about October 27, 2010, MidCoast's Executive Loan Committee approved a modification of the $700,000.00 commercial mortgage, which changed the loan from a ten-year term loan requiring both principal and interest payments to a five-year, interest-only line of credit. The Commercial Loan Approval Modification form indicated that the funding would "assist with the costs incurred with the capital improvements to be completed on each of the mobile home parks," and that "the borrower will need access to a portion of the proposed loan for some of the 'up front' impact and [sewer] connection fees along with the attorney fees associated with this process." Ladio approved the modification, both in his management capacity and in his capacity as a member of the Executive Loan Committee.

G. On or about October 28, 2010, MidCoast and Bank Customer A closed on the modified line of credit. That same day, an employee for Bank Customer A submitted wire instructions to MidCoast, which directed the Bank to deposit $650,000.00 into an account controlled by Bank Customer A.

H. Also on or about October 28, 2010, approximately $629,240.00 was wired from the account controlled by Bank Customer A to Ladio's personal checking account at another financial institution. This amount represented the total amount that Bank Customer A had received from MidCoast, minus the transaction fee and interest set forth in a "Schedule" that the parties executed that same day.

I.  On or about October 29, 2010, Ladio executed a Promissory Note with Bank Customer A, in which Bank Customer A agreed to loan Ladio $650,000.00 at an interest rate of 8%. The Promissory Note set forth a maturity date of December 31, 2010, at which time "[t]he entire Principal together with any accrued but unpaid interest shall be fully paid[.]" The Promissory Note further stated that Ladio would prepay interest in the amount of $9,260.00, and it incorporated the Schedule entered into between Ladio and Bank Customer A on the previous day.

J.  Ladio did not repay to Bank Customer A the entire principal and unpaid interest amount on or before December 31, 2010. In or around October 2013, Ladio entered into a forbearance agreement with Customer A and agreed to restructure the loan.

All in violation of Title 18, United States Code, Sections 1344 and 2.

## COUNT 2

(Money Laundering)

15.  The allegations set forth in paragraphs 1-11 and 14 of this Information are realleged and incorporated by reference as if fully set forth herein.

16.  On or about October 28, 2010, in the District of Delaware, defendant James A. Ladio did knowingly engage and attempt to engage in a monetary transaction by through or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000.00, that is, the transfer of funds into a bank account, such property having been derived from a specified unlawful activity, that is, bank fraud, as charged in Count 1 of the Indictment.

All in violation of Title 18, United States Code, Sections 1957 and 2.

## COUNT 3

(Bank Fraud)

17. The allegations set forth in paragraphs 1-11 of this Information are realleged and incorporated by reference as if fully set forth herein.

18. From in or around early-July 2011, and ending on or about July 14, 2011, defendant James A. Ladio devised a scheme and artifice to obtain moneys, funds, credits, assets, securities, or other property owned by MidCoast, by means of materially false or fraudulent pretenses, representations, or promises.

19. It was part of the scheme and artifice that the defendant caused a MidCoast customer, Bank Customer B, to misrepresent that the purpose of a commercial line of credit was to fund working capital needs of various business interests, when in truth and in fact, as defendant and Bank Customer B well knew, the funds would be used for Bank Customer B to provide a loan to defendant. Defendant and other individuals known to the United States Attorney committed the following acts in connection with the scheme and artifice:

 A. In or around July 2011, Ladio contacted Bank Customer B and asked if Bank Customer B would be willing to loan him money. Ladio informed Bank Customer B that Bank B had called one of his loans, and that he needed money to repay Bank B.

 B. On or about July 13, 2011, MidCoast's Executive Loan Committee approved a thirty-five month term line of credit for Bank Customer B in the amount of $700,000.00. An accompanying memo to the Commercial Loan Approval Form indicated that the purpose of the line of credit was "to cover the working capital needs of [Bank Customer B's] various business interests."

 C. On or about July 14, 2011, Bank Customer B and MidCoast executed various documents in connection with the line of credit, including a Business Loan Agreement, Promissory Note, and Disbursement Request and Authorization Form (the "Authorization

Form"). The Authorization Form indicated that the specific purpose of the loan was "Working capital for [Bank Customer B's] various business interests, including his construction company and farm."

        D.     Also on or about July 14, 2011, MidCoast wired $650,000.00 into an account held by Bank Customer B at another financial institution. On that same date, a wire transfer was made out of Bank Customer B's account to Ladio's personal bank account at Bank B in the amount of $639,000.00. This amount represented the total amount that Bank Customer B had received from MidCoast, minus the transaction fee and interest payments.

        E.     On or about July 14, 2011, Ladio executed a promissory note with Bank Customer B, in which Bank Customer B agreed to loan Ladio $650,000.00 at an interest rate of 10%. The Promissory Note set forth a maturity date of September 30, 2013, at which time "[t]he entire Principal together with any accrued but unpaid interest shall be fully paid[.]" The Promissory Note further stated that Ladio would prepay interest in the amount of $10,833.33.

All in violation of Title 18, United States Code, Sections 1344 and 2.

## COUNT 4
(Money Laundering)

20.    The allegations set forth in paragraph 1-11 and 19 of this Information are realleged and incorporated by reference as if fully set forth herein.

21.    On or about October 28, 2010, in the District of Delaware, defendant James A. Ladio did knowingly engage and attempt to engage in a monetary transaction by through or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000.00, that is, the transfer of funds into a bank account, such property having been derived from a specified unlawful activity, that is, bank fraud, as charged in Count 3 of the Indictment.

All in violation of Title 18, United States Code, Sections 1957 and 2.

## NOTICE OF FORFEITURE

*Forfeiture Allegation for Counts 1 and 3 (Bank Fraud)*

1. Upon conviction of the offenses in violation of Title 18, United States Code, Sections 1344 and 2, alleged in Counts 1 and 3 of the Information, defendant James A. Ladio shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(2)(A), any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of such violations.

If any of the forfeitable property, as a result of any act or omission of the defendant:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided with difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

All pursuant to Title 18, United States Code, Section 982(a)(2)(A) and Title 28, United States Code, Section 2461(c).

*Forfeiture Allegation for Counts 2 and 4 (Money Laundering)*

2. Upon conviction of the offense in violation of Title 18, United States Code, Sections 1957 and 2, alleged in Counts 2 and 4 of this Information, defendant James A. Ladio

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in such offense, and any property traceable to such property.

If any of the forfeitable property, as a result of any act or omission of the defendant:

(a)  cannot be located upon the exercise of due diligence;

(b)  has been transferred or sold to, or deposited with, a third party;

(c)  has been placed beyond the jurisdiction of the court;

(d)  has been substantially diminished in value; or

(e)  has been commingled with other property which cannot be divided with difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

All pursuant to Title 18, United States Code, Section 982(a)(1) and Title 28, United States Code, Section 2461(c).

CHARLES M. OBERLY, III
United States Attorney

By: *Robert F. Kravetz*
Robert F. Kravetz
Assistant U.S. Attorney

By: *Lesley F. Wolf*
Lesley F. Wolf
Assistant U.S. Attorney

Dated: November 25, 2013